IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00841-RM-MJW

JAMES ROBERT GRESHAM,

Plaintiff,

v.

ROBERT HIMSCHOOT, and
JASON LENGERICH,

Defendants.

---

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 92)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this Court pursuant to an Order Referring Case to Magistrate Judge issued by Judge Raymond P. Moore on June 21, 2016 (Docket No. 20) and the Memorandum (Docket No. 88) referring Defendants Robert Himschoot and Jason Lengerich's (collectively "Defendants") Motion for Summary Judgment. (Docket No. 92.) The Court has reviewed the parties' filings, taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Civil Procedure and case law. Now being fully informed the Court makes the following report and recommendation.

## Procedural Background

Defendants filed their Motion for Summary Judgment on February 27, 2018. (Docket No. 92.) Under D.C.COLO.LCivR 7.1(d), Plaintiff's[1] response to that motion was due March 20, 2018. Under Fed. R. Civ. P. 6(d), that response would have been deemed timely if received by the Court no later than May 23, 2018. On March 13, 2018, the Court received Plaintiff's Notice of Evidence Tampering by Defendant's [sic]. (Docket No. 94.) In striking this filing, Judge Moore observed that it was unclear whether Plaintiff was seeking relief or responding to Defendants' Motion for Summary Judgment, and informed Plaintiff that if the Notice was intended to be a response to the Motion for Summary Judgment, he must title the document as a response. (Docket No. 95.) On March 22, 2018, the Court received an additional filing docketed as "Motion for Order Seeking Relief by Plaintiff James Robert Gresham." (Docket No. 96.) The undersigned Magistrate Judge construed the filing as a cross-motion for summary judgment, but found that it failed to comply with Fed. R. Civ. P. 56, D.C.COLO.LCivR 56.1, and Section IV.B of Judge Moore's Civil Practice Standards, and the motion was therefore denied without prejudice. (Docket No. 100.) The Court also noted that the filing was not titled as a response and did not address Defendants' Motion for Summary Judgment in the format required by Judge Moore. (*Id.*) Plaintiff was warned that his

---

[1] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). The Court, however, should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

failure to respond to Defendants' Motion for Summary Judgment could lead to the motion being deemed confessed and judgment entering in Defendants' favor. (*Id.*) A month later, when no response had been filed, the Court sua sponte extended the deadline for Plaintiff to respond to Defendants' Motion for Summary Judgment to May 10, 2018, and again warned Plaintiff of the possible consequences if he chose not to file a response. (Docket No. 102.)

Plaintiff did not file a response to the Motion for Summary Judgment on or before May 10, 2018. Accordingly, Plaintiff has confessed the motion. *See Walter v. HSM Receivables*, No. 13-cv-00564-RM-KLM, 2014 WL 5395197, at *1 (D. Colo. Oct. 23, 2014) ("The Motion is essentially unopposed as no response has been filed by Defendants."); *Armstrong v. Swanson*, No. 08-cv-00194-MSK-MEH, 2009 WL 1938793, at *1 (D. Colo. July 2, 2009) (noting that Plaintiff did not file a response to the motion for sanctions and "deem[ing] the Plaintiff to have defaulted on th[e] motion."). However,

> [s]ummary judgment is not proper merely because [Plaintiff] failed to file a response. Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its "initial responsibility" of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law.

*Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). As the Tenth Circuit has explained,

> a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is "appropriate" under Rule 56. Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts

asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment. *See Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001); *Anchorage Assoc. v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 175-76 (3d Cir. 1990); *Livernois v. Medical Disposables, Inc*., 837 F.2d 1018, 1022 (11th Cir. 1988).

*Reed*, 312 F.3d at 1195.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## Undisputed Material Facts

- Defendant Himschoot worked for the Colorado Department of Corrections ("CDOC") for approximately three years as a correctional officer in the Buena Vista Correctional Complex ("BVCC"). (Himschoot Aff., Docket No. 92-2 ¶ 1.)

- Defendant Lengerich is the Warden of BVCC. (Lengerich Aff., Docket No. 92-7 ¶ 1.)

- At the time of the events giving rise to Plaintiff's claims, Plaintiff was incarcerated at BVCC, and housed in B-Unit, Wing 6, Cell 4. (Himschoot Aff., Docket No. 92-2 ¶ 6.)

- On March 6, 2015, Himschoot was working in the B-Unit, supervising an inmate who was working on removing and cleaning light fixtures using a screw driver, which is a "class A" tool. Himschoot had with him a tool box in which the screw driver was stored. (*Id.* ¶¶ 5, 7.)

- Offenders using class A tools must be supervised at all times, since these tools can be used as weapons. (*Id.* ¶ 8.)

- While supervising the offender fixing the lights, Defendant Himschoot saw another inmate, Keith Frey, coming up the stairs of B-Unit. (*Id.* ¶ 9.)
- Offenders at BVCC are not permitted to enter housing units to which they are not assigned, and because Frey was housed in C-Unit, he was not permitted to be in B-Unit. (*Id.* ¶¶ 10-11.)
- Defendant Himschoot asked Frey what he was doing; Frey said he wanted to speak with Defendant Himschoot, and followed him to the entrance of Wing 5, where the other offender was cleaning the lights. (*Id.* ¶¶ 12-13.)
- Defendant Himschoot told Frey to leave, to which Frey replied that he needed to drop something off to someone. Defendant Himschoot again told Frey to leave. (*Id.* ¶¶ 13-14.)
- Frey disobeyed Defendant Himschoot's orders, and proceeded down Wing 6. (*Id.* ¶ 15.)
- Defendant Himschoot had to decide whether to follow Frey, which would leave the offender alone with the screwdriver, call for assistance, or remain with the offender; Defendant Himschoot decided to remain with the offender. (*Id.* ¶¶ 17-18, 20.)
- Defendant Himschoot then heard noise coming from Wing 6, so he decided to investigate. (*Id.* ¶ 22.)
- As he approached Cell 4, Defendant Himschoot heard a commotion and Plaintiff say, "get out of my room now." (*Id.* ¶ 25.)
- Defendant Himschoot arrived at the cell and saw Plaintiff and Frey grabbing

5

- each other by the shirts, Plaintiff with a dark red wound on his right eye. (*Id.* ¶ 26.)
- Defendant Himschoot ordered the fight to stop, and Plaintiff and Frey complied. (*Id.* ¶ 27.)
- Defendant Himschoot called for assistance, handcuffed Frey, and escorted him towards the office in B-Unit–retrieving and securing the screwdriver and tool box in the process–while another officer arrived and attended to Plaintiff. (*Id.* ¶¶ 28-30.)
- Defendant Himschoot strip searched Frey in the office restroom, and then escorted him to a segregation unit. (*Id.* ¶¶ 31-32.)
- Defendant Himschoot then returned to B-Unit and escorted Plaintiff to medical for an anatomical examination. (*Id.* ¶ 33.)
- A video of the incident shows Frey walking down the hallway of Wing 6 at approximately 7:26:19, Frey entering Plaintiff's cell at approximately 7:26:34, Himschoot walking down Wing 6 towards Plaintiff's cell at approximately 7:26:55, and Himschoot arriving at cell 4 at approximately 7:27:04. (Himschoot Aff., Docket No. 92-2 ¶¶ 16, 21, 23, 26; Docket No. 92-4.[2])
- Defendant Himschoot did not know Frey intended to go to Plaintiff's cell, and did not know of any issues between Frey and Plaintiff. (*Id.* ¶¶ 19, 34-35.)
- Frey did not take the screwdriver from the toolbox, and no tools were found in

---

[2] Docket No. 72-4 is Attachment 2 to the Affidavit of Robert Himschoot. It is a video of incident taken in the BVCC hallway outside of Plaintiff's cell. It was conventionally submitted, and the Court reviewed the video in its entirety.

Plaintiff's cell. (*Id.* ¶¶ 36-37.)

- Defendant Himschoot was not involved in the decision to charge Plaintiff with a Code of Penal Discipline ("COPD") violation for fighting, nor was he involved in Gresham's COPD hearing or the decision to find him guilty of fighting with Frey. (*Id.* ¶ 38.)

- Defendant Himschoot authored an incident report on March 6, 2014 that is consistent with his sworn affidavit. (*Id.* ¶ 3; Docket No. 92-3.)

- In June 2015, Defendant Lengerich was notified that Plaintiff was filing multiple frivolous grievances, as defined in Administrative Regulation ("AR") 850-04. (Lengerich Aff., Docket No. 92-7 ¶¶ 6, 10.)

- In accordance with the grievance procedure, on July 1, 2015, Defendant Lengerich served a warning letter on Plaintiff wherein he was warned that his grievance privileges may be suspended because he had filed 10 frivolous grievances in the past 60 days. (*Id.* ¶¶11-12; Docket No. 92-9.)

- On September 24, 2015, Defendant Lengerich served on Plaintiff a Notice of Grievance Restriction, suspending his grievance privileges because he continued to file frivolous grievances despite the earlier warning. (Lengerich Aff., Docket No. 92-7 ¶ 22; Docket No. 92-11.)

- Defendant Lengerich followed CDOC regulations regarding frivolous grievances in issuing the warning letter and Notice of Grievance Restriction, and he was not retaliating against Plaintiff for filing grievances or attempting to prevent CDOC headquarters from finding out about the March 6, 2015 incident with Frey.

7

(Lengerich Aff., Docket No. 92-7 ¶¶ 27-28.)

- The March 6, 2015 incident was investigated by the CDOC's Office of Inspector General, who found no wrongdoing by Defendant Himschoot. (*Id.* ¶ 29.)

- Both Plaintiff and Frey received COPD convictions for fighting as a result of the incident. (*Id.* ¶ 30; Docket No. 92-5.)

- The Fremont County District Court affirmed Plaintiff's COPD conviction on September 22, 2015. (Docket No. 92-6.)

- Under his grievance restriction, Plaintiff was still able to file one grievance per month for 90 days, and was still able to utilize the emergency grievance procedure if he believed he was subject to a risk to his safety or health. (Lengerich Aff., Docket No. 92-7 ¶¶ 8, 31-32; Docket No. 92-8.)

- Plaintiff did not file any grievances against Defendant Lengerich after the grievance restriction was implemented or at any other time. (DeCesaro Aff., Docket No. 92-13 ¶ 12.)

## **Legal Standard**

As Judge Moore recently summarized:

> Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569-70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "Under Rule 56(c), the moving party[ ] always bears the initial responsibility of informing the district court of the basis for its motion...." *Reed v. Bennet*, 312 F.3d 1190, 1994 (10th Cir. 2002) (quoting *Celotex*

*Corp*., 477 U.S. at 322). However, the moving party "can satisfy that burden with respect to an issue on which it does not bear the burden of persuasion at trial simply by indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *1-800-Contacts, Inc. v. Lens.com, Inc*., 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. *See id.* A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill*., 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995). "[C]onclusory and self-serving affidavits are not sufficient." *Id.* (citation omitted). The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation, alterations and citation omitted).

*Crist v. Dorr to Door Pizza, LLC*, No. 13-cv-02550-RM-MJW, 2015 WL 4574949, at *1-2 (D. Colo. July 30, 2015).

## Analysis

### Eighth Amendment Claim Against Defendant Himschoot

In his Amended Complaint, Plaintiff alleges that Defendant Himschoot was informed that Frey had a motive to attack Plaintiff but did nothing to prevent the assault. (Docket No. 6 at 8.)

Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A claim of failure to protect under the Eighth Amendment has "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component of the test is met if the harm suffered is "sufficiently serious" to implicate the Cruel and Unusual Punishment Clause. To satisfy this component, the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209. "Under this component, the inmate must establish that prison officials had a sufficiently culpable state of mind in allowing the deprivation to take place." *Verdecia*, 327 F.3d at 1175 (10th Cir. 2003) (citing *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)). To be liable for unsafe conditions of confinement, the prison official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw the inference. *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005) (citing *Farmer,* 511 U.S. at 847). "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citations omitted). "Mere negligence does not constitute deliberate indifference." *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006). S*ee also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407-10 (1997) (recognizing that a higher standard is required than simple negligence or heightened negligence). Both the objective and subjective components must be satisfied. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

Here, the undisputed evidence shows that both Plaintiff and Frey were grabbing each other by the shirts, that both suffered injuries, and that both received COPD convictions for fighting. (Docket No. 92-1 ¶¶ 20-21, 26, 34, & 62). Moreover, Plaintiff's conviction was affirmed in Fremont County District Court. (*Id.* ¶ 35; Docket No. 92-6.) Accordingly, Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact he was under an objective threat of "substantial risk of serious harm."

Even if he could satisfy the objective component, in light of the evidence presented, Plaintiff cannot show that Defendant Himschoot was subjectively aware of a significant risk to Plaintiff's safety. Defendant Himschoot states in his affidavit that he did not know that Frey was going to Plaintiff's cell, and that he was unaware of any prior

issue or problem between the two inmates. (Docket No. 92-2 ¶¶ 19, 34-35.) Thus, there is no evidence that Defendant Himschoot knew of and disregarded an excessive risk to Plaintiff's health. Even if Defendant Himschoot had known about the bad blood between Frey and Plaintiff, the Court cannot say that Defendant Himschoot acted with culpable recklessness by deciding that he could not leave the inmate he was supervising alone with a potentially dangerous weapon. Defendant Himschoot also responded quickly when he heard noise coming from Plaintiff's cell, and the altercation immediately stopped upon his arrival. Accordingly, Plaintiff has failed to show that Defendant Himschoot violated his Eighth Amendment rights.

**Retaliation Claim Against Defendant Lengerich**

Plaintiff alleges that Defendant Lengerich put Plaintiff on grievance restrictions in retaliation for Plaintiff reporting the attack, demanding a "full investigation," and filing a "detailed grievance on the warden on this matter and notif[ying] the [CDOC's] inspector general." (Docket No. 6 at 6.) The grievance restriction was allegedly put in place as a way to cover up what happened and "to avoid any of this incident to go up to higher ups in head quarters [sic]." (*Id.*)

Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). "The existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right" may give rise to a cause of action pursuant to Section 1983. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). A First Amendment retaliation claim requires proof of the following elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007). Because an inmate "is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity," Plaintiff must prove, using specific facts, "that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Peterson*, 149 F.3d at 1144 (citation omitted).

Here, the undisputed material facts show that there was no retaliatory motive for Defendant's Lengerich's decision to place Plaintiff on a grievance restriction. Instead, Defendant Lengerich acted in accordance with CDOC regulations, which permit him to suspend an inmate's grievance privileges if he or she abuses that privilege and files multiple frivolous grievances. Plaintiff was warned that his grievance privileges would be suspended due to his filing of 10 frivolous grievances in the past 60 days. When he continued filing frivolous grievances, Defendant Lengerich made good on that warning. (Docket No. 92-7 ¶¶ ¶¶ 27-28.) Defendant Lengerich did not violate Plaintiff's constitutional rights.

Finally, prison records indicate that Plaintiff did not follow the CDOC's three-step grievance procedure regarding Defendant Lengerich's decision to place him on grievance restriction. (Docket No. 92-13 ¶ 12.) Even though he was on placed on restriction, he was still able to file one new Step 1 grievance per calendar month. (*Id.*)

By failing to do so with regards to Defendant Lengerich's actions, Plaintiff did not exhaust his administrative remedies, and his claim is barred by the Prison Litigation Reform Act. *See id* ¶ 7. *See also* 42 U.S.C. § 1997e(a).

## Recommendation

It is hereby **RECOMMENDED** that Defendants Robert Himschoot and Jason Lengerich's Motion for Summary Judgment (Docket No. 92) be **GRANTED** and that Plaintiff's Amended Complaint (Docket No. 6) be **DISMISSED WITH PREJUDICE**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions,** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996)**.

Dated:  June 13, 2018  */s/ Michael J. Watanabe*
  Denver, Colorado  Michael J. Watanabe
   United States Magistrate Judge